UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

BOKF, NA,

    Plaintiff,

v.

ROBERT ESTES, KAREN NILES, JERRY CARPENTER, SHIRLEY CARVEY, and JAMES CARPENTER and BECKY LYNN CARPENTER as Co-Trustees of the CARPENTER FAMILY REV TRUST UAD 1/19/14,

    Defendants.

Case No. 3:17-cv-0694-LRH-(WGC)

ORDER

    Before the court is plaintiff BOKF, NA's ("BOKF") motion for a preliminary injunction. ECF No. 17. Defendants Robert Estes; Karen Miles; Jerry Carpenter; Shirley Carvey; and James and Becky Lynn Carpenter, as co-trustees of the Carpenter Family Rev Trust UAD 1/19/14, (collectively "defendants") filed an opposition to the motion (ECF No. 28) to which BOKF replied (ECF No. 32).

    Also before the court is defendants' cross-motion for a preliminary injunction. ECF No. 25. BOKF filed an opposition (ECF No. 31) to which defendants replied (ECF No. 36).

**I.    Facts and Procedural Background**

    Plaintiff BOKF is a federally chartered commercial bank organized as a national association under the National Bank Act and doing business as Bank of Oklahoma, N.A.

1

BOKF's Corporate Trust Department ("CTD"), allegedly a separate and distinct corporate department of BOKF, serves as the indenture trustee[1] for conduit municipal bonds[2] issued in the United States. Relevant to this action, BOKF's CTD served as the indenture trustee for a series of allegedly fraudulent conduit municipal bond offerings for the purchase and renovation of senior living facilities located throughout the Southeastern and Midwestern United States by non-party conduit borrowers Christopher Brogdon[3] and Dwayne Edwards.[4] Each of the underlying bonds were underwritten by non-party Lawson Financial Corporation.[5] During the relevant time period, BOKF's CTD was overseen by non-party Marrien Nielson, a former vice president of BOKF.[6] Besides acting as the indenture trustee, BOKF also served as the bond registrar, paying agent, and dissemination agent for a number of the bonds. Pursuant to its various roles related to the bonds, BOKF owed fiduciary duties to the bondholders as outlined in the indenture contracts and federal rules governing municipal securities.

In 2016, the SEC filed a complaint against BOKF alleging that BOKF violated federal securities laws by intentionally aiding and abetting other parties, including conduit borrowers

---

[1] An indenture trustee is a party who operates as trustee pursuant to an indenture contract. An indenture contract is a "contract between the issuer of municipal securities and a trustee for the benefit of the bondholders." Municipal Securities Rulemaking Board, Glossary of Municipal Terms (Indenture), available at http://www.msrb.org/glossary/definition/indenture.aspx. An Indenture Trustee "administers the funds or property specified in the indenture in a fiduciary capacity on behalf of the bondholders." *Id.* The purpose of an indenture is to protect the bondholders.
[2] A conduit municipal bond is similar to a normal municipal bond except that a conduit bond is issued by a governmental entity to finance a project on behalf of a third-party, including for profit entities. Municipal Securities Rulemaking Board, Glossary of Municipal Terms (Conduit Financing), available at http://www.msrb.org/glossary/definition/conduitfinancing.aspx. In a conduit municipal bond offering, a municipal authority technically serves as the issuer of the bond, but issues the bond on behalf of a "conduit" borrower who then agrees to make payments to bondholders from the revenues generated by the project.
[3] On November 20, 2015, the Securities and Exchange Commission ("SEC") filed a complaint against Christopher Brogdon related to some of the underlying conduit municipal bonds, a copy of which is attached to defendants' request for judicial notice. *See* ECF No. 26, Ex. 1-F.
[4] On January 20, 2017, the Securities and Exchange Commission ("SEC") filed a complaint against Dwayne Edwards related to some of the underlying conduit municipal bonds, a copy of which is attached to defendants' request for judicial notice. *See* ECF No. 26, Ex. 1-G.
[5] On April 5, 2017, the SEC issued a cease-and-desist and sanctions order against Lawson Financial Corporation for fraud and violations of the federal securities laws arising from the underwriting of the bonds, a copy of which is attached to defendants' request for judicial notice. *See* ECF No. 26, Ex. 4.
[6] On September 9, 2016, the SEC filed a complaint against Marrien Nelson for her allegedly fraudulent conduct related to the underlying conduit municipal bonds, a copy of which is attached to defendants' request for judicial notice. *See* ECF No. 26, Ex. 1-H.

Christopher Brogdon and Dwayne Edwards, in defrauding municipal securities investors. BOKF eventually entered into a consent agreement with the SEC for its role in the alleged fraud.[7]

Defendants are bondholders of the underlying conduit municipal bonds. On June 30, 2017, defendants initiated arbitration against BOKF pursuant to the Code of Arbitration of the Financial Industry Regulatory Authority ("FINRA")[8] alleging that BOKF engaged in conduct violating federal securities laws in connection with the underlying conduit municipal bonds. *See* ECF No. 26, Ex. 1 (FINRA Statement of Claim). In their claim, defendants contend that BOKF is subject to FINRA arbitration because it is a bank dealer engaging in municipal securities activities under the rules of the Municipal Securities Rulemaking Board ("MSRB").[9] *Id.*

On November 13, 2017, BOKF filed a complaint against defendants in federal court alleging two causes of action: (1) declaratory judgment that BOKF is not subject to FINRA arbitration; and (2) injunctive relief. ECF No. 1. Thereafter, on December 11, 2017, BOKF filed the present motion for a preliminary injunction seeking to enjoin defendants from prosecuting or taking any other action in furtherance of the pending FINRA arbitration currently set for July 2018, pending the court's ultimate determination on BOKF's declaratory relief claim. ECF No. 17.

## II. Legal Standard

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, a court may issue a preliminary injunction against a party to prevent, enjoin, or bind its conduct. *See* FED. R. CIV. P. 65. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Rather, a preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). The purpose of a preliminary injunction is "to preserve the positions of the parties until a full trial can

---

[7] A copy of the consent judgment and cease-and-desist order is attached to defendants' request for judicial notice. *See* ECF No. 26, Ex. 1-E.

[8] FINRA is an independent regulatory agency created by the Securities Exchange Act of 1934 to protect investors of securities and regulate the securities industry.

[9] The MSRB is a self-regulating organization created by Section 15B of the Securities Exchange Act of 1934 which governs municipal securities and is a compatriot organization to FINRA.

3

be conducted" on the underlying issues. *Herbert J. Sims & Co., Inc. v. Roven*, 548 F.Supp.2d 759, 762 (N.D. Cal. 2008).

A court may grant a preliminary injunction only upon a showing that: (1) the petitioner is likely to succeed on the merits of his complaint; (2) the petitioner will suffer irreparable harm absent an injunction; (3) the balance of equities weighs in petitioner's favor; and (4) an injunction is in the public's interest. *Winter*, 555 U.S. at 20. The Ninth Circuit has since interpreted *Winter* as being compatible with a sliding scale, under which a party may satisfy the requirements for an injunction if a petitioner has raised "serious questions going to the merits" of its complaint in light of a very strong showing of irreparable harm. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984). "In all cases, the burden of persuasion remains with the party seeking preliminary injunction relief." *Herbert J. Sims*, 548 F.Supp.2d at 762.

In considering a motion for a preliminary injunction, the court is permitted to consider all of the parties' pleadings and submissions, including the consideration of inadmissible evidence. *Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F.Supp.3d 957, 966 (C.D. Cal. 2016); *see also, Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (stating that a preliminary injunction is customarily addressed on "procedures that are less formal and evidence that is less complete than in a trial on the merits"); *Garcia v. Green Fleet Sys., LLC*, 2014 WL 5343814, *5 (C.D. Cal. Oct. 10, 2014) ("Indeed, district courts have considerable discretion to consider otherwise inadmissible evidence when ruling on the merits of an application for a preliminary injunction.").

### III. Discussion

#### A. Likelihood of Success on the Merits

The legal issue raised in BOKF's motion for a preliminary injunction is whether FINRA lacks jurisdiction to hear defendants' arbitration claim. *See* ECF No. 17. Generally, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navig. Co.*, 363 U.S. 574, 582 (1960). The determination of whether or not there is an agreement to arbitrate

4

a dispute is an issue for the court. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see also, Sykes v. Escueta*, 2010 WL 4942608, at *2 (N.D. Cal. Nov. 29, 2010) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (holding that "[q]uestions of arbitrability – such as whether an arbitration agreement exists and whether an arbitration clause covers the dispute in question – are issues 'for judicial determination unless the parties clearly and unmistakably provide otherwise.'").

FINRA is a non-governmental, self-regulating organization and has no specific grant of authority to conduct arbitration proceedings. As such, "its authority to compel arbitration must have some contractual basis – either a contract between a customer and FINRA member, or an agreement between the member and FINRA." *Sykes*, 2010 WL 4942608, at *2. FINRA arbitrations are governed by its Code of Arbitration Procedure ("the Code"). *Herbert J. Sims*, 548 F.Supp.2d at 762. Under the Code, a party is required to arbitrate if (1) arbitration is required by a written agreement or (2) arbitration is requested by a member's customers. *See* FINRA Code of Arbitration Procedure, Rule 12200. "The interpretation of the arbitration rules of an industry self-regulatory organization (or "SRO") such as FINRA is similar to contract interpretation; the organization's arbitration provision should thus be interpreted to give effect to the parties' intent as expressed by the plain language of the provision." *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, LTD.*, 661 F.3d 164, 171 (2d Cir. 2011) (internal quotations omitted). However, the court's "analysis differs from ordinary contract interpretation in that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* This is because there is a long-standing "liberal federal policy favoring arbitration agreements." *Sykes*, 2010 WL 4942608, at *2.

Here, it is undisputed that the underlying indenture contracts[10] do not include any agreement to arbitrate disputes arising from the underlying bonds. As such, arbitration is not required by any written agreement between BOKF and the defendant bondholders for defendants' claims. Thus, defendants are without authority to initiate arbitration proceedings

---

[10] An exemplar of the indenture contracts covering the underlying conduit municipal bonds at issue in this action is attached as Exhibit B to BOKF's index of exhibits in support of its motion for a preliminary injunction. ECF No. 18, Ex. B.

under the first part of Rule 12200. However, under the Code "customers can compel registered members of FINRA to arbitrate certain disputes even when no written arbitration agreement exists." *Herbert J. Sims*, 548 F.Supp.2d at 763; *see also, Multi-Financial Securities Corp. v. King*, 386 F.3d 1364, 1367 (11th Cir. 2004) ("Although there is no direct written agreement to arbitrate between [the parties], the Code serves as a sufficient written agreement to arbitrate, bindings its members to arbitrate a variety of claims with third-party claimants."). Although BOKF is not a registered member of FINRA, defendants initiated arbitration proceedings on the basis that BOKF is a "bank dealer" compelled to arbitrate under Rule G-35 of the MSRB rules. *See* ECF No. 26, Ex. 1 (FINRA Statement of Claim). Rule G-35 provides that, "every bank dealer (as defined in rule D-8) shall be subject to the Code of Arbitration Procedure . . . for every claim, dispute or controversy arising out of or in connection with the municipal securities activities of the bank dealer acting in its capacity as such." ECF No. 26, Ex. 1-B (Municipal Securities Rulemaking Board, Rules and Guidance, Rule G-35).

In its motion for a preliminary injunction, BOKF raises two arguments as to why FINRA is without jurisdiction to hear defendants' claims: (1) defendants are not "customers" of BOKF with standing to initiate the FINRA arbitration; and (2) BOKF's "separately identifiable" Corporate Trust Department is not a "bank dealer" subject to FINRA arbitration. *See* ECF No. 17. Thus, there are two issues presently before the court. First, whether defendants are "customers" of BOKF under Rule 12200 of the Code. Second, whether BOKF's CTD is a "bank dealer" subject to FINRA arbitration under Rule G-35 of the MSRB rules. The court shall address each question below.

**1. Customer Standing**

In its first challenge to the pending FINRA arbitration, BOKF argues that defendant bondholders are not customers of BOKF as contemplated by Rule 12200 and thus, they did not have standing to initiate FINRA arbitration against BOKF. *See* ECF No. 17. As addressed below, the court disagrees and finds that defendant bondholders are customers of BOKF with respect to the underlying conduit municipal bonds, and, as such, had standing to initiate the FINRA arbitration.

Rule 12100(k) of the Code defines the term "customer" only in the negative: "[a] customer shall not include a broker or dealer." FINRA Code of Arbitration, Rule 12100(k). The Ninth Circuit has interpreted the definition of "customer" broadly, stating that "a 'customer' is a non-broker and non-dealer who purchases commodities, or services from a FINRA member in the course of the member's FINRA-regulated business activities, i.e., the member's investment banking and securities business activities." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741 (9th Cir. 2014). BOKF argues that the Ninth Circuit intended to limit the definition of "customer" to a direct purchasing relationship, i.e., that defendants must have purchased the bonds directly from BOKF. *See* ECF No. 31. However, district courts considering the "customer" question after *City of Reno* have found "that 'customer' is not so narrowly defined.'" *Hull v. Bennett*, 2015 WL 11438547, at *3 (C.D. Cal. Sept. 15, 2015). In fact, the Ninth Circuit's decision in *City of Reno* speaks to the inclusion of the protections offered by FINRA to a broad range of possible customers, rather than the exclusion of such protections under a formulaic and arbitrary test. *See City of Reno*, 747 F.3d at 740-42. In this regard, the Ninth Circuit's purchasing language has been construed to include an investment relationship between the parties arising from the relevant securities rather than an actual "purchase" of those securities. *See Hunsinger v. Carr*, 2016 WL 2996782, at *6 (E.D. Penn. May 24, 2016) (holding that a party was a "customer" if it had a direct investment relationship with the FINRA member).

Here, defendants contend that they acquired business services from BOKF related to the bonds arising from BOKF's role as indenture trustee, bond registrar, dissemination agent, and paying agent. Related to these roles, BOKF was the party responsible for paying bondholders on their investments and providing bondholders information about their investments. These activities are clearly services provided by BOKF to the bondholders in relation to the underlying conduit municipal bonds. Further, defendant bondholders are beneficiaries of the indenture contracts and it is undisputed that BOKF, as indenture trustee, owed fiduciary duties to administer the bond proceeds on behalf of the bondholders. Moreover, for its role as indenture trustee, BOKF was paid fees for its services from the bondholder's investment proceeds which shows a direct investment relationship even though defendants did not specifically buy the bonds

7

from BOKF. Thus, based on the above, the court finds that there is sufficient evidence to establish that defendants have an investment relationship with BOKF to qualify as customers under Rule 12200. *See Hunsinger*, 2016 WL 2996782, at *6. It would be incongruent to hold that the bondholders of bonds, who are direct beneficiaries of the indenture contracts related to those bonds and whose investment proceeds paid for BOKF's services, are not customers of BOKF under the Ninth Circuit's broad construction of the term. Therefore, the court finds that BOKF is not likely to succeed on its challenge that bondholder defendants are not customers with standing to initiate FINRA arbitration.

### 2. Bank Dealer

Under MSRB Rule D-8, the term "bank dealer" means "a municipal securities dealer which is a bank or a separately identifiable department or division of a bank as defined in Rule G-1" of the MSRB rules. ECF No. 26, Ex. 1-B (Municipal Securities Rulemaking Board, Rules and Guidance, Rule D-8). Rule G-1 provides that "[a] separately identifiable department or division of a bank . . . is that unit of the bank which conducts all of the activities of the bank relating to the conduct of business as a municipal securities dealer ("municipal securities dealer activities"), as such activities are hereafter defined[.]" *Id.*, Ex. 1-C (Municipal Securities Rulemaking Board, Rules and Guidance, Rule G-1). Under this rule, municipal securities dealer activities are defined as: "(a) underwriting, trading and sales of municipal securities; (b) financial advisory and consultant services for issuers in connection with the issuance of municipal securities; (c) processing and clearance activities with respect to municipal securities; (d) research and investment advice with respect to municipal securities; (e) any activities other than those specifically enumerated above which involve communication, directly or indirectly, with public investors in municipal securities; and (f) maintenance of records pertaining to the activities described in paragraphs (a) through (e) above; provided, however, that the activities enumerated in paragraphs (d) and (e) above shall be limited to such activities as they relate to the activities enumerated in paragraphs (a) and (b) above." *Id.*

In its motion, BOKF contends that its Corporate Trust Department, a separately identifiable department of BOKF, is not a "bank dealer" because it did not engage in any of the

8

defined activities of a municipal securities dealer in relation to the underlying conduit municipal bonds. Rather, BOKF argues that its CTD acted solely in its capacity as the indenture trustee for the underlying municipal bonds. Thus, because BOKF's CTD is not a bank dealer under the MSRB rules, BOKF argues that FINRA is without jurisdiction to arbitrate any claims against it arising from the underlying bonds.

In support of its motion, BOKF relies on a 1975 rules guidance issued by the MSRB which provides, in pertinent part, that a bank's corporate trust department which only performs "clearance and other functions with respect to municipal securities, but which do not relate to the underwriting, trading and sales activities of the bank, [does] not perform municipal securities dealer activities within the meaning of rule G-1." Municipal Securities Regulatory Board, MSRB Guidance of Rule G-1, MSRB interpretation of November 17, 1975. Initially, the court notes that the MSRB guidance does not state that indenture trustees, as a rule, are not "bank dealers" under MSRB rules which is the insinuation BOKF makes in its motion. Instead, the MSRB guidance makes clear that bank employees who solely perform clearance functions related to municipal securities are not engaged in municipal securities dealer activities as defined in Rule G-1 when performing those functions. As such, the 1975 MSRB guidance is only relevant to the court's analysis of whether BOKF's CTD is a "bank dealer" if the CTD employees engaged only in clearance related activities for the underlying bonds.

The court recognizes that BOKF alleges that its CTD engaged solely in clearance related activities related arising from its role as the indenture trustee on the bonds. However, the only evidence submitted in support of BOKF's claim is the self-serving affidavit of Brent Varzaly, the new Senior Vice President of BOKF's CTD. *See* ECF No. 18, Ex. A. In contrast, defendants have proffered significant evidence that BOKF's CTD engaged in other municipal securities dealer activities beyond simply clearance functions.[11] For example, the various SEC complaints

---

[11] Defendants' proffered evidence includes a multitude of SEC complaints and consent orders filed and issued in relation to the bond offerings. See ECF No. 26, Exs. 1 – 1-H, 3-6. As part of its briefing on the present motion for a preliminary injunction, BOKF filed objections to defendants' proffered evidence attached as exhibits to their request for judicial notice (ECF No. 26). ECF No. 33. In particular, BOKF contends that the various SEC complaints, consent orders, press releases, and FINRA claim documents are inadmissible as adjudicative facts upon which the court can take judicial notice. *See* ECF No. 33. Although technically correct that most of the proffered evidence is inadmissible in its current iteration, BOKF's objections have no impact on the court's discretion to consider this

and consent orders submitted in support of defendants' opposition raise plausible inferences that BOKF's CTD went above and beyond simply ministerial clearance duties in relation to the underlying conduit municipal bonds and instead actively aided and abetted securities fraud in the bond offerings. In particular, defendants have proffered evidence that BOKF's former Senior Vice President Marrien Neilson (who oversaw the CTD during the relevant time period) served as the primary contact person between BOKF, the underwriter Lawson Financial Corporation, and the conduit borrowers. In this capacity, Marrien Neilson allegedly provided financial advice and consultation to these parties concerning the terms, structure, and timing of the bond offerings in order to help perpetuate and cover up the fraud. Such conduct constitutes municipal securities dealer activities under Rule G-1. *See* ECF No. 26, Ex. 1-C (Municipal Securities Rulemaking Board, Rules and Guidance, Rule G-1(b)) (defining municipal securities dealer activities as "financial advisory and consultant services for issuers in connection with the issuance of municipal securities"). Further, defendants contend that employees within the CTD, including Marrien Neilson, engaged in research activities on behalf of the underwriter Lawson Financial Corporation in connection with the issuance and underwriting of the bonds. Rule G-1(d) provides that "research and investment advice with respect to municipal securities," when such research is related to the underwriting of those securities, constitutes a municipal securities dealer activity. ECF No. 26, Ex. 1-C (Municipal Securities Rulemaking Board, Rules and Guidance, Rule G-1(d)). Moreover, a MSRB guidance from 1978 provides that "persons . . . who render research in connection with underwriting, trading or sales activities" engage in municipal securities dealer activities under Rule G-1. Municipal Securities Regulatory Board, MSRB Guidance of Rule G-1, MSRB interpretation of June 8, 1978.

Taking into consideration all of the parties' arguments and evidence submitted on the present motion, the court finds that BOKF has not met its burden of persuasion that it is entitled

---

evidence in evaluating the present motion. *See Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F.Supp.3d 1177, 1185 (C.D. Cal. 2015) (holding that district courts may consider inadmissible evidence in the context of a preliminary injunction). At best, BOKF's current objections go to the "weight rather than admissibility" of the evidence and, in light of the relaxed evidentiary standard at this stage in the proceedings and the relative lack of evidence submitted by BOKF in support of its motion, the court affords sufficient weight to the SEC complaints and consent decrees to find it plausible that BOKF's CTD engaged in the alleged conduct. *Id.*

to preliminary injunctive relief, especially in light of the strong policy in construing the scope of arbitrable issues under FINRA broadly and in favor of arbitration. *VCG Special Opportunities Master Fund, LTD.*, 661 F.3d at 171. In fact, the court finds that the limited evidence in support of BOKF's argument fails to even raise "serious questions" going to the merits of its claim. *See Sierra On-Line, Inc.*, 739 F.2d at 1421 (9th Cir. 1984) (stating that a "serious question" is one on which the movant "has a fair chance of success on the merits"). Therefore, the court finds that BOKF has failed to establish that it is not likely to succeed on its claim that FINRA does not have jurisdiction over the pending arbitration.

### B. Remaining Injunction Factors

The court also finds that BOKF has not met the remaining *Winter* factors of irreparable harm, public interest, and the balance of equities sufficient to overcome the court's findings on the likelihood of success on the merits of its claim and thus warrant an injunction. First, BOKF has failed to establish that it will suffer any irreparable harm absent an injunction. In its motion, BOKF contends that it would be forced to spend time, money, and resources to defend itself in the FINRA arbitration if an injunction is not issued. *See* ECF No. 17. Courts have consistently held that forced participation in an arbitration forum that does not have jurisdiction over the dispute is *per se* irreparable harm. *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1235 (E.D. Cal. 2015) ("[M]ost, if not all courts hold that being required to arbitrate a dispute that the parties did not agree to arbitrate is *per se* irreparable harm."); *see also, Merril Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (finding that plaintiff "would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable."). Here, however, the court has found that BOKF has not established that FINRA lacks jurisdiction over the parties' dispute. As it is only *per se* irreparable harm to force a party to arbitrate when there is no jurisdiction, the court finds that BOKF has failed to establish any actual irreparable harm resulting from having to arbitrate a dispute in a forum that has jurisdiction to hear the parties' claims.

Second, the court finds that because BOKF has not established that it is likely to succeed on the merits of its complaint, the balance of the equities favors defendants as enjoining a

11

legitimate arbitration without any legal basis would unfairly and prejudicially impair defendants from prosecuting their claims in their chosen forum. *See Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1528 (9th Cir. 1993) (holding that in seeking a preliminary injunction, the moving party must suffer a degree of hardship that outweighs the hardship on the opposing party). Finally, the court finds that the public interest favors ensuring that investors are protected under federal securities regulations like those enacted by FINRA and the MSRB when a party, like BOKF, has not sufficiently established that such rules are not applicable to the current dispute. Accordingly, the court shall deny BOKF's motion for a preliminary injunction.

The court shall also deny defendants' cross-motion for a preliminary injunction (ECF No. 25). The court finds that a denial of BOKF's motion effectively equates with granting defendants' requested relief in allowing the pending arbitration to move forward. However, defendants' cross-motion also requests additional affirmative relief that goes beyond simply protecting the status quo which the court finds unnecessary to grant at this time.

IT IS THEREFORE ORDERED that plaintiff's motion for a preliminary injunction (ECF No. 17) is DENIED.

IT IS FURTHER ORDERED that defendants' cross-motion for a preliminary injunction (ECF No. 25) is DENIED.

IT IS SO ORDERED.

DATED this 2nd day of March, 2018.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE